UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MELISSA (ALYSSA) ROLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:25-cv-00096 |
| | ) |
| SHARON ROLLINS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Melissa Rollins filed a pro se Complaint invoking the Court's federal-question jurisdiction and "alleg[ing] violations of the U.S. Constitution, including Due Process, unlawful seizure of property, and civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986." (Doc. No. 1 ("the Complaint") at 1). In response to the Court's deficiency order (Doc. No. 7), Plaintiff has filed a renewed application for leave to proceed in forma pauperis (IFP). (Doc. No. 9).

Plaintiff's renewed IFP application reveals that she has no income or assets of significant value, and that she is owed spousal support that has not been paid. The Court thus finds that she cannot afford to pay the $405 civil filing fee "without undue hardship." Foster v. Cuyahoga Dep't of Health and Human Servs., 21 F. App'x 239, 240 (6th Cir. 2001). The IFP application (Doc. No. 9) is therefore **GRANTED**. 28 U.S.C. § 1915(a).

**I. INITIAL REVIEW**

The Court must conduct an initial review and dismiss the Complaint if, among other grounds, it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B); see also Ongori v. Hawkins, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir.

Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). This initial screening includes a review for subject-matter jurisdiction, see Lee v. Money Gram Corp. Off., No. 15-CV-13474, 2016 WL 3524332, at *1 (E.D. Mich. May 23, 2016), report and recommendation adopted, 2016 WL 3476704 (E.D. Mich. June 27, 2016), of which the Court must be assured "at the earliest possible moment to avoid wasting judicial and party resources." Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi, 43 F.4th 624, 627 (6th Cir. 2022).

A. ALLEGATIONS AND CLAIMS

    1. The Complaint and Attachments

The Complaint names the following Defendants: Sharon Rollins, Michael Rollins, Gayla C. Hendrix, Mingy Kay Ball, J. Hilton Conger, Laura Kirby, DeKalb County, Tennessee, and DeKalb County Title Company.[1] It appears from the attachments to the Complaint that Melissa, Sharon, and Michael Rollins were parties to a DeKalb County Chancery Court action to resolve their respective claims to the property at 280 Sandgate Drive in Smithville, Tennessee, and that Defendants Hendrix, Conger, and Ball were their respective attorneys in that action. (See Doc. No. 1-2 at 18–20, 29–30). Attorney Hendrix also appears to have represented Plaintiff in her 2022 action for spousal support against Michael Rollins. (See id. at 27–28). Both actions were before DeKalb County Chancellor Ronald Thurman.

On July 18, 2024, upon finding that the disputed property could not otherwise be partitioned among the Rollinses and that its sale was therefore required, Chancellor Thurman ordered Plaintiff to either buy the interests of the other parties within 30 days or, if she could not

---

[1] This Defendant does not appear to be an entity of the DeKalb County government, but a private title company doing business as DeKalb Title. See https://dekalbtitle.com/ (last visited Dec. 16, 2025); see also Doc. No. 1-2 at 32 (HUD settlement statement listing DeKalb Title as seller's title company).

do so, to vacate the premises so that it might be sold either by agreement of the parties or by a Special Master at public auction. (Id. at 29–30). In August 2025, Plaintiff filed a "Motion to Realign the Parties and Assert Sole Ownership Interest" in the Chancery Court, asking that court "to reflect that she is the sole real party in interest and rightful owner of the property located at 280 Sandgate Drive, Smithville, TN 37166." (Id. at 45–46). The resolution of this Chancery Court motion is not explicitly revealed in Plaintiff's filings, but she includes an exhibit listing the "fraudulent orders" she is challenging (id. at 40), including (1) a recent order used by the title companies that "misrepresent[s] ownership" by "falsely treat[ing] Plaintiff as if she was never gifted the home," and (2) any order "used to remove Plaintiff from the home" given to her and her ex-husband Michael by his parents, despite that her final divorce decree reserved ruling on the parties' rights to the Sandgate Drive property. (Id.). The exhibit concludes by stating that "[t]hese orders directly resulted in: Forced displacement, [l]oss of $25,000+ in work equipment, [d]estruction of belongings, [and] [s]evere hardship and medical decline." (Id.).

In the Complaint, Plaintiff alleges that Michael and Sharon Rollins gifted the Sandgate Drive property to her and that she is therefore the true owner. (Doc. No. 1 at 2). She further claims that the DeKalb County Title Company "ignored [her] recorded liens, lis pendens, and spousal support order," and otherwise "acted with county officials and private actors to divest Plaintiff of rightful proceeds" from the sale of the property. (Id.). She claims that Sharon Rollins committed mortgage fraud, that DeKalb County "issued divorce orders without jurisdiction" that were subsequently used against Plaintiff, and that, "without immediate federal intervention," she will face irreparable harm to her financial interests. (Id. at 2–3). The Complaint, though introduced as a pleading "for emergency injunctive relief and damages," explicitly "seeks an immediate TRO to prevent seizure of [Plaintiff's] proceeds, enforcement of fraudulent court orders, and continued

3

deprivation of her rights." (Doc. No. 1 at 1). It does not request any other relief but incorporates the requests for relief as "fully outlined in the Emergency TRO Motion." (Id. at 3).

2. The TRO Motion

The TRO Motion (Doc. No. 3) filed with the Complaint asks the Court to issue an order that will:

1. Freeze all proceeds from sale of 280 Sandgate Dr.
2. Freeze all accounts controlled by Sharon Lambert Rollins, including FirstBank, equity, POA, and hidden accounts.
3. Order title companies to halt all actions and recognize liens.
4. Block fraudulent Final Decree issued without jurisdiction.
5. Prevent any further mortgage fraud or equity withdrawals.
6. Preserve all financial and legal documents.
7. Stop coercion, threats, and intimidation.
8. Stop realtor and attorney-buyer extortion.
9. Recognize Plaintiff as a trafficking survivor under TVPA protections.
10. Document severe medical, financial, and emotional harm including homelessness, hearing loss, brain surgery recovery, and medical deprivation.

(Id. at 1). The Motion claims that, absent federal intervention, Plaintiff will be harmed irreparably by the "permanent loss of property, medical harm, coerced signing under duress, and continued trafficking-related exploitation" she faces. (Id.). In her attached declaration, Plaintiff states that, because her attorney concealed evidence from the judge, she was evicted "illegal[ly]" and "without hearing." (Id. at 2). She claims that she was physically harmed by being "forced to live without heat or air for six months" (presumably at the Sandgate Drive property), and that she is being

4

pressured by "[a] realtor and attorney-buyer" to sign away her rights to the property from which she was ultimately evicted. (Id.).

3. Subsequent Filing

On December 9, 2025, Plaintiff filed an "Emergency Notice of Imminent State Court Hearing" (Doc. No. 8), in which she claims to have been served with a summons to DeKalb County Chancery Court proceedings set "on or about December 15, 2025." (Id. at 1). Those proceedings would, if "[a]llow[ed] . . . to continue before federal review," risk irreparable harm to her property and due process rights. (Id.). The summons, issued on December 3 and allegedly served on December 8, is attached as an exhibit to this filing; it directs Plaintiff "to defend a civil action filed against [her]" in Chancery Court by Rider Renee Rentals, LLC—presumably, the buyer of the property (see Doc. No. 1-2 at 31–32)—by filing her defense with the court clerk and sending a copy to Rider Renee Rentals, LLC's attorney within 30 days of service. (Doc. No. 4).

B. ANALYSIS

The Court begins by noting that neither the TRO Motion and supporting declaration (Doc. No. 3 at 1, 2) nor the Emergency Notice of Imminent State Court Hearing (Doc. No. 8) are signed by hand. A "personal signature" is required to verify a declaration under penalty of perjury. Blount v. Stanley Eng'g Fastening, 55 F.4th 504, 515 (6th Cir. 2022). An electronic or typed signature will not suffice. Id. Moreover, Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, or other paper" be "personally" signed by an unrepresented party and further requires the Court to strike an unsigned filing if the failure to sign is not "promptly corrected." Fed. R. Civ. P. 11(a); see Becker v. Montgomery, 532 U.S. 757, 763–64 (2001) (declining "to permit typed names" to satisfy Rule 11 signature requirement). Nevertheless, because the Complaint is signed by Plaintiff personally and incorporates the TRO Motion by

5

reference, the Court will consider Plaintiff's unsigned filings for purposes of conducting this initial review.

The Complaint and TRO Motion ask this Court to "prevent . . . enforcement of fraudulent court orders" (Doc. No. 1 at 1) and to "[b]lock [the] fraudulent Final Decree" of the DeKalb County Chancery Court (Doc. No. 3 at 1) that resulted in the sale and distribution of proceeds of the Sandgate Drive property. The Complaint claims that enforcement of the state court's "divorce orders," issued "without jurisdiction, without Plaintiff present, and without ruling on property" (Doc. No. 1 at 2), will result in unlawful "seizure of her proceeds and "continued deprivation of her rights." (Id. at 1; see also Doc. No. 1-2 at 40 (describing "orders [that] directly resulted in" harm to Plaintiff)). In making this claim and asking that the DeKalb County Chancery Court's orders be countermanded by an injunctive order of this Court, Plaintiff effectively invites appellate review of the state court's judgments, which this Court lacks jurisdiction to undertake.

The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see also McCormick v. Braverman, 451 F.3d 382, 396 (6th Cir. 2006) (Rooker–Feldman "prevents a party who loses in state court from appealing that decision to the lower federal courts, as only the Supreme Court has appellate jurisdiction over state court decisions"). The doctrine is "confined" to the limited set of cases described above; it "does not otherwise override or supplant preclusion doctrine," Exxon Mobil, 544 U.S. at 284, which would potentially apply instead of Rooker-Feldman when a plaintiff does not claim injury from a state-

6

court judgment but attempts simply to relitigate a matter decided in another forum. See In re Adams, 151 F.4th 144, 152 (3d Cir. 2025).

Rooker-Feldman bars review of a complaint that challenges a state court order as "erroneously entered" and seeks to enjoin the enforcement of that order. Smith v. Meyers, 843 F. Supp. 2d 499, 507 (D. Del. 2012). More particularly, the doctrine bars a claim that a state court's order "seize[d] Plaintiff's real estate . . . in violation of Plaintiff's United States Constitutional rights" and "illegally seiz[ed]" insurance proceeds "absent any jurisdiction," because that claim asserts "that the state court order itself was illegal and harmed Plaintiff." McCormick, 451 F.3d at 395. It is just such a claim that forms the gravamen of the Complaint for violation of civil rights. Plaintiff attributes harm "directly" to the orders of the Chancery Court (Doc. No. 1-2 at 40), and the Complaint cites federal statutes and invokes this Court's injunctive powers "to prevent seizure of her proceeds" through the continuing "enforcement of fraudulent court orders" in violation of her civil rights. (Doc. No. 1 at 1, 2 (claiming that DeKalb County is liable because it "issued divorce orders without jurisdiction" and "those orders are now being fraudulently used to seize her proceeds")). The Court lacks subject-matter jurisdiction to adjudicate any Section 1983 claim that the orders of the Chancery Court violate Plaintiff's civil rights and must therefore be enjoined, blocked, or set aside.

Alternatively, Plaintiff's federal claims are all subject to dismissal because they do not support any plausible right to relief. DeKalb County is appropriately sued under 42 U.S.C. § 1983, see Miller v. Calhoun Cnty., 408 F.3d 803, 813 (6th Cir. 2005) ("A body politic is a 'person' within the meaning of § 1983.") (citation omitted), but not for the rulings of one of its chancellors. (See Doc. No. 1 at 2 (claiming County liability because chancellor "issued divorce orders without jurisdiction, without Plaintiff present, and without ruling on property—yet those orders are now

7

being fraudulently used to seize her proceeds")). DeKalb County can only be liable under Section 1983 for harm caused by the execution of an official county policy or custom. See Monell v. Dept. of Soc. Serv.'s of N.Y.C., 436 U.S. 658, 690 (1978) (holding that local governing bodies may be sued directly under § 1983, but only where an official policy or custom of the local government is alleged to be responsible for the deprivation of federal rights); Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989) ("[B]efore a local government can be held liable for injuries under section 1983, ... a plaintiff must show that his injuries were the result of some 'policy or custom' attributable to the governmental entity") (citing Monell, supra); Hick v. Bexar Cnty., Tex., 973 F. Supp. 653, 682–83 (W.D. Tex. 1997), aff'd sub nom. Hicks v. Bexar Cnty., 137 F.3d 1352 (5th Cir. 1998) (holding that municipality "cannot be held liable under a *respondeat superior* theory of liability for the acts or omissions of [municipal] Judges," but only for civil rights violations caused by a municipal policy or custom). No policy or custom of DeKalb County is alleged to have caused Plaintiff's injuries, and no other Defendant is alleged to be a state actor for purposes of Section 1983.[2] See Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014) (stating that viable § 1983 claim requires allegations that plaintiff was deprived of a constitutional or other federal right by a "state actor").

As to Plaintiff's claim under 42 U.S.C. § 1985(3), that statute provides a cause of action against conspiracies among private parties. The Complaint broadly alleges a conspiracy to "divert proceeds" away from Plaintiff. (Doc. No. 1 at 3). However, it does not allege that the conspiring parties sought to interfere with Plaintiff's rights "because of racial or class-based animus," as required to plead a plausible claim under Section 1985(3). Mathis v. Core Civic of Tennessee, No.

---

[2] While the Complaint alleges "coordinated fraud" by the DeKalb County Title Company and unnamed "county officials and private actors" (Doc. No. 1 at 2), this allegation appears to be made in support of a state law fraud claim. (See id. at 3 (asserting fraud in addition to a conspiracy under federal law)).

1:25-CV-00256-KG-JFR, 2025 WL 3158201, at *3 (D.N.M. Nov. 12, 2025); see also Stark v. City of Memphis, No. 19-2396-JTF-TMP, 2020 WL 8770177, at *7 (W.D. Tenn. Feb. 18, 2020), report and recommendation adopted, 2021 WL 597880 (W.D. Tenn. Feb. 16, 2021) (Section 1985(3) plaintiff "must plausibly allege that the conspiracy was motivated by animus against a particular constitutionally protected class" of "discrete and insular minorities") (quoting Volunteer Med. Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 224 (6th Cir. 1991) (internal quotation marks omitted)). No such animus is reasonably inferable from the Complaint or Plaintiff's other filings, so she fails to state a viable claim under Section 1985(3). And because liability under Section 1986 is contingent upon a plausible claim to liability under Section 1985, Radvansky v. City of Olmsted Falls, 395 F.3d 291, 315 (6th Cir. 2005), Plaintiff's Section 1986 claim fails as well.

Where, as here, there is no diversity of citizenship between the parties, the Court may hear state law claims (like the fraud, conversion, civil theft, and abuse of process claims asserted against the individual Defendants and the DeKalb County Title Company (Doc. No. 1 at 3)) by exercising supplemental jurisdiction under 28 U.S.C. § 1367. But if all claims within the Court's original jurisdiction (i.e., all federal claims in the Complaint) are dismissed, the Court in its discretion may decline to exercise jurisdiction over supplemental state law claims. Weser v. Goodson, 965 F.3d 507, 519 (6th Cir. 2020). And if the federal claims are dismissed before trial, "the state claims generally should be dismissed as well." Id. (quoting Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009)). Accordingly, the Court declines to exercise its supplemental jurisdiction in this case. Plaintiff's state law claims will be dismissed without prejudice.

9

# III. CONCLUSION

As discussed above, Plaintiff's claim under 42 U.S.C. § 1983 is **DISMISSED WITHOUT PREJUDICE** under the Rooker-Feldman doctrine, for lack of subject-matter jurisdiction. Alternatively, this claim is dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986 are **DISMISSED** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court in its discretion declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under state law. Those claims are **DISMISSED WITHOUT PREJUDICE** to Plaintiff's ability to pursue them in state court.

In light of the dismissal of this action, Plaintiff's TRO Motion (Doc. No. 3) is **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE